# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CHARLES ENGLE, CAMDEN FAIN, and CHARLES ROSS,** | |
| *Plaintiffs* | **Case No:** |
| v. | |
| **TENNESSEE HIGHWAY PATROL; BRIDGETT HILL, in her individual capacity; TIM PICKEL, in his individual capacity; JAMES ZAHN, in his individual capacity,** | |
| *Defendants.* | **JURY DEMAND** |

## COMPLAINT

Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 for damages as well as declaratory relief against Defendants Tennessee Highway Patrol, and Bridgett Hill, Tim Pickel, and James Zahn, in their individual capacities. Plaintiffs were unlawfully arrested and maliciously prosecuted by Defendants for Driving Under the Influence (herein "DUI") under Tennessee Code Annotated §55-10-401, *et seq*.

### PARTIES

1. **Plaintiff Charles Engle** resides in Camden, Tennessee and was unlawfully arrested by Tennessee Highway Patrol ("THP") Trooper Bridgett Hill on July 22, 2025. He was falsely charged with DUI in Benton County.

2. **Plaintiff Camden Fain** resides in Nolensville, Tennessee, and was unlawfully arrested by THP Trooper Tim Pickel on May 4, 2025. He was falsely charged with DUI in Williamson County.

1

3. **Plaintiff Charles "Mike" Ross** resides in Thompson Station, Tennessee and was unlawfully arrested by THP Trooper James Zahn on July 11, 2025. He was falsely charged with DUI in Williamson County.

4. **Defendant Tennessee Highway Patrol** is an agency within the Tennessee Department of Safety and Homeland Security. The Tennessee Department of Safety and Homeland Security is headquartered in Nashville, Tennessee

5. **Defendant Bridgett Hill ("Trooper Hill" or "Defendant Hill")** is a Trooper with the Tennessee Highway Patrol and is sued in her individual capacity.

6. **Defendant Tim Pickel ("Trooper Pickel" or "Defendant Pickel")** is a Trooper with the Tennessee Highway Patrol and is sued in his individual capacity.

7. **Defendant James Zahn ("Trooper Zahn" or "Defendant Zahn")** is a Trooper with the Tennessee Highway Patrol and is sued in his individual capacity.

## JURISDICTION AND VENUE

8. The Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) because the controversy arises under the U.S. Constitution and 42 U.S.C. §1983.

9. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)(1) and 28 U.S.C. § 1391(b)(2).

## FACTS

### Plaintiff Charles Engle

10. Charles Engle is seventy years old. He is a retired over-the-road truck driver. He lives with his wife, Deborah, on a small farm near Camden, Tennessee. They care for over 100 animals, including ducks, chickens, geese, goats, horses, and rabbits.

2

11. Before his arrest, Mr. Engle mowed and baled hay in the hay fields around Camden, Tennessee to feed his own livestock. He sold extra haybales for additional income.

12. Mr. Engle suffers from macular degeneration in his left eye. Several years ago, he was forced to retire from truck driving because of the macular degeneration in his left eye.

13. Mr. Engle's right hip has degenerated due to his age and needs to be replaced.

14. Mr. Engle has Type II diabetes.

A. Charles Engle is Falsely Arrested for Driving Under the Influence

15. On the morning of July 22, 2025, around 10 A.M., Mr. Engle headed south on Highway 641 in his truck, pulling his tractor and mower on a trailer.

16. Highway 641 had been recently re-paved, creating a lip where raised, fresh pavement met the ungraded roadside.

17. The wheel of Mr. Engle's trailer caught on the pavement lip, causing the trailer to swing. Mr. Engle lost control of his truck and crossed over to the other side of the highway, where his trailer jack-knifed and tipped over into a ditch near Beech Acres Drive.

18. Shaken and upset, Mr. Engle called his wife, who was at their nearby home, making him breakfast. When Mrs. Engle arrived at the scene, she assessed the damage and called a tow truck.

19. In the meantime, a Benton County Sheriff's officer arrived at the scene and also assessed the accident. He did not appear to investigate (or begin to investigate) Mr. Engle for driving under the influence.

20. The Benton County Sheriff's officer checked Mr. Engle's driver's license and allegedly received information that his license was suspended. (Mr. Engle was never convicted of driving on a suspended license.)

3

21. Mr. Engle was very shaken and upset because of the serious accident he had just experienced. He feared for his life when his truck crossed over the other side of the highway.

22. It was a very hot, sunny day with temperatures reaching nearly 100 degrees Fahrenheit.

23. THP Trooper Bridgett Hill arrived at the scene of the accident around 11 A.M.

24. Trooper Hill approached Mr. Engle, who was standing on the hot pavement beside his truck, and asked if he would perform field sobriety tests.[1]

25. Mr. Engle agreed to perform the field sobriety tests but told Trooper Hill that he would likely fail the tests because he cannot see well out of his left eye and cannot lift his legs because of his hip.

26. Ms. Engle also repeatedly informed Trooper Hill of Mr. Engle's "bad hip." Trooper Hill recorded this statement in her criminal citation narrative.

27. Trooper Hill noted in her citation for arrest that Mr. Engle had "bloodshot eyes," "was stumbling," and performed "poorly" on the field sobriety tests.

28. Trooper Hill did not reexamine or reevaluate Mr. Engle's poor performance on the field sobriety tests in light of the information about his eye or hip injuries or Mr. Engle's age.

29. Mr. Engle also disclosed that he had diabetes and had not yet eaten breakfast. Trooper Hill commented that it was "not very smart" to not have eaten breakfast.

---

[1] "Standardized Field Sobriety Tests," or SFSTs, are three standardized tests developed by the National Highway Traffic Safety Administration (NHSTA) for the detection of impairment due to alcohol. The three "SFSTs" are the (1) Horizontal Gaze Nystagmus (HGN); (2) One Leg Stand (OLS); and Walk and Turn (WAT). THP Troopers appear to also employ three additional, non-standardized tests: (1) Finger to Nose; (2) Rhomberg Balance; and (3) Lack of Convergence.

30. Trooper Hill arrested Mr. Engle for Driving under the Influence, in violation of Tenn. Code Ann. §55-10-401, *et seq* and for Driving on a Suspended License, in violation of Tenn. Code Ann. §55-50-504.

31. Driving on a Suspended License is a citable offense and does not require arrest. Tenn. Code Ann. §40-7-118(3)(C).

32. Trooper Hill placed handcuffs on Mr. Engle and put him in the back of her car.

33. Trooper Hill drove Mr. Engle to the hospital where he consented to a blood draw. Hospital staff performed a blood draw.

34. Then, Trooper Hill drove Mr. Engle to the Benton County Jail where he was booked on charges of DUI and Driving on a Suspended License.

35. Mr. Engle remained in custody for about eight (8) hours until his wife was able to post his $5,000 bond.

## B. False Charge of DUI Dismissed

36. Mr. Engle was represented by a public defender.

37. On July 31, 2025, Mr. Engle's blood samples were received by the Tennessee Bureau of Investigation ("TBI") for testing.

38. On August 15, 2025, the TBI test results showed a negative blood alcohol content.

39. On September 12, 2025, the TBI test for ten classes of controlled substances showed that Mr. Engle's blood was negative for all tested controlled substances.

40. On November 19, 2025, four months after his arrest, the DUI charge against Mr. Engle was dismissed. The judgement sheet cites "negative labs" as the reason why the District Attorney entered a *nolle prosequi* judgment.

5

41.     Mr. and Ms. Engle experienced extreme financial hardship due to his false arrest. Ms. Engle was forced to sell Mr. Engle's tractor, their primary source of food, for their livestock, in order to post his $5,000 bond.

42.     Without the ability to mow hay to feed their animals, Ms. Engle, who is sixty-eight, had to get a job delivering online shopping orders in her own truck.

43.     Mr. and Ms. Engle now pay over $6000 a year to buy hay for their animals and have been unable to afford a replacement tractor.

## Plaintiff Camden Fain

44.     Camden Fain is a twenty-three-year-old resident of Nolensville, Tennessee.

45.     He previously attended Lipscomb University, where his study of children's literature received special recognition by the university.

46.     Mr. Fain works in the hospitality industry in Nashville, Tennessee. He lives with his mother and father.

### A.  Mr. Fain is Falsely Arrested for Driving under the Influence

47.     Around 4 A.M., on May 4, 2025, Mr. Fain and a friend were in Mr. Fain's car heading south on Nolensville Road.

48.     Mr. Fain's G.P.S. in his car erroneously marked the speed limit on this section of road as 40 MPH, as many commercially available maps do. (Mapcomplete.org, for example, lists the speed limit at Nolensville Road and Brittain Lane as 40 MPH).

49.     At 4:22 A.M., Trooper Tim Pickel initiated a traffic stop of Mr. Fain's car for traveling at 46 MPH in a 30 MPH zone.

50.     As soon as he saw Trooper Pickel's flashing lights, Mr. Fain immediately pulled over onto the right shoulder.

51. It was completely dark outside with very few streetlights to illuminate this section of the road.

52. When Trooper Pickel approached Mr. Fain's car on the driver's side, Mr. Fain had his driver's license and car registration in hand.

53. Trooper Pickel explained to Mr. Fain that he had been stopped for speeding.

54. Trooper Pickel stated that he smelled alcohol and then asked if Mr. Fain had been drinking alcohol.

55. Mr. Fain answered truthfully that he had two shots of Jack Daniels and two vodka and Red Bull energy drinks much earlier in the night—several hours before driving.

56. Mr. Fain explained that he had stopped drinking much earlier in the night so that he could safely drive himself and his friend home and that he was now sober.

57. Mr. Fain erroneously believed that if he were forthcoming with the trooper that he would be treated fairly and that Trooper Pickel would believe Mr. Fain was telling the truth.

58. Trooper Pickel asked Mr. Fain to get out of Mr. Fain's car and Mr. Fain did so immediately without assistance.

59. Mr. Fain asked Trooper Pickel to give him a breathalyzer test to determine Mr. Fain's blood alcohol content.

60. Trooper Pickel told Mr. Fain that a breathalyzer test was not available and informed Mr. Fain that if he were arrested for DUI, he would be taken to the hospital for a blood draw.

61. Mr. Fain then began to perform field sobriety tests.

62. During the Horizontal Gaze Nystagmus ("HGN") test, Trooper Pickel shined a bright flashlight into Mr. Fain's eyes.

63. While being tested, Mr. Fain's passenger became distressed and upset. Mr. Fain was very distracted by his passenger's obvious distress while performing the tests.

64. After the three standardized field sobriety tests were performed, Tropper Pickel placed Mr. Fain under arrest for Driving under the Influence, in violation of Tenn. Code Ann. §55-10-401, *et seq*, and for speeding under Tenn. Code Ann. §55-8-152—a C misdemeanor punishable by fine only.

65. Trooper Pickel took Mr. Fain to a hospital where Mr. Fain consented to a blood draw. The sample was collected at 6:05 A.M—just under two hours after Mr. Fain was stopped.

66. Mr. Fain was then taken to Williamson County Jail and held on a $1,500 cash bond.

67. He spent several hours in jail before his parents posted his bond.

### B. False Charge of DUI Dismissed

68. The week after Mr. Fain was released from custody, Mr. Fain suffered extreme emotional distress due to the arrest. His mother feared that he was going to commit suicide. She called 911 and requested police assistance at their house.

69. The police took Mr. Fain to Vanderbilt hospital in an ambulance. There, Mr. Fain spoke to medical staff and received help for his acute mental health crisis.

70. Mr. Fain retained an attorney to represent him against the charge of DUI. Mr. Fain's parents paid this attorney $5,000.

71. On May 29, 2025, TBI completed its analysis of the blood alcohol content of Mr. Fain's blood. Mr. Fain's blood was "negative" for ethyl alcohol.

72. On July 14, 2025, the TBI test for ten classes of controlled substances showed that Mr. Fain's blood was negative for all tested controlled substances.

8

73.     On October 8, 2025, five months after Mr. Fain was arrested, the district attorney in Williamson County entered a *nolle prosequi* for Mr. Fain's DUI charge and speeding citation.

74.     Mr. Fain is currently working to pay back his parents for the cost of the cash bond and attorney. He still suffers from depression, anxiety, and mental anguish caused by the false arrest.

**Plaintiff Charles "Mike" Ross**

75.     Mike Ross is a fifty-four-year-old resident of Thompson Station, Tennessee.

76.     At the time of his arrest, he was employed (but on medical leave) as a Principle Technical Program Manager at Amazon, Inc., in Nashville, Tennessee.

77.     Mr. Ross is a self-taught computer programmer and classical pianist. He formerly played piano professionally as a session musician.

78.     As a result of being struck by a car as a child, Mr. Ross's left leg is an inch and a half shorter than his right leg. He walks with an observable limp.

79.     Prior to his arrest, Mr. Ross was diagnosed with chronic post-traumatic stress disorder, severe depression and anxiety. These conditions can cause his language and thought processes to be slowed.

80.     He is the father of four adult children.

        A.  Mr. Ross is Falsely Arrested for Driving under the Influence

81.     On the night of July 11, 2025, Mr. Ross and his then-girlfriend had dinner at Kimbro's Pickin' Parlor, a live music venue and barbeque restaurant in downtown Franklin, Tennessee.

82.     Mr. Ross arrived at Kimbro's around 6 P.M. and had two alcoholic drinks with a full meal. After he finished his meal, he did not consume any more alcohol.

9

83. Around 10:30 P.M., knowing himself to be sober, Mr. Ross began to drive to his home in Thompson Station with his girlfriend.

84. As he approached the intersection of Highway 431 and Interstate 840, Mr. Ross saw a DUI checkpoint being conducted.

85. Knowing he was sober, Mr. Ross chose to proceed through the checkpoint despite having ample time to turn off Highway 431 and avoid the checkpoint.

86. As THP Trooper James Zahn approached Mr. Ross's driver's side window, Mr. Ross prepared to hand Trooper Zahn his driver's license and car registration.

87. Trooper Zahn asked Mr. Ross, "Where are you coming from?"

88. Mr. Ross told Trooper Zahn that he was coming from dinner at Kimbro's. He truthfully told Trooper Zahn that he had two drinks at dinner hours before driving.

89. Mr. Ross began detailing the type of drinks and when he drank them, but Trooper Zahn did not listen to his answer, stating that he "did not care," and ordered Mr. Ross to get out of the car.

90. Mr. Ross immediately got out of his car without assistance.

91. Trooper Zahn asked if Mr. Ross had any medical conditions that would prevent him from taking field sobriety tests.

92. Mr. Ross told Trooper Zahn that his left leg is shorter than his right leg. Mr. Ross explained that he has a limp.

93. Mr. Ross further explained to Trooper Zahn that he would not be able to perform tests that involved balancing because of his limp.

94. Mr. Ross also explained that he was undergoing tests for autoimmune diseases at the time.

10

95. Trooper Zahn did not ask any further questions and administered six field sobriety tests, including tests that measure balance, despite knowing that Mr. Ross's legs are two different lengths.

96. Trooper Zahn recorded that Mr. Ross "performed poorly" and did not note the physical impairments Mr. Ross had disclosed to him in the arrest narrative.

97. Trooper Zahn then asked for Mr. Ross's consent to perform a blood draw and read Mr. Ross the implied consent form.

98. Mr. Ross did not understand the information being verbally given to him and did not understand what Trooper Zahn was telling him about implied consent.

99. Trooper Zahn notes in the arrest warrant that Mr. Ross stated he did not understand.

100. Trooper Zahn then placed Mr. Ross under arrest for DUI, in violation of Tenn. Code Ann. §55-10-401, *et seq*. Trooper Zahn also issued an implied consent violation—a civil penalty under Tenn. Code Ann. §55-10-406.

101. Trooper Zahn placed Mr. Ross in handcuffs and put Mr. Ross in the back of his car.

102. Mr. Ross was never offered a breathalyzer test.

103. Mr. Ross's children were called to the scene of his arrest to pick up Mr. Ross's car where they witnessed him being under arrest. This was deeply distressing and embarrassing to Mr. Ross.

104. Trooper Zahn took Mr. Ross to the hospital where a blood sample was taken. At the hospital, Mr. Ross asked to see the results of the blood test immediately, believing that the results would be exculpatory and could prevent him from being taken to jail.

105. Instead, he was told that the test results would take "months" and was taken to be booked at the Williamson County jail.

11

106. Before he was booked into jail, Trooper Zahn again showed Mr. Ross the implied consent form, saying that Mr. Ross did not "really refuse" to give consent and could still sign the form. The form, however, showed that Trooper Zahn had checked a box stating that Mr. Ross refused to consent. Mr. Ross was confused by this and did not trust Trooper Zahn, so he declined to sign any paperwork proffered by Trooper Zahn.

107. Nonsensically, Trooper Zahn still charged Mr. Ross with an implied consent violation even though Trooper Zahn had, in fact, just escorted Mr. Ross to the hospital and witnessed Mr. Ross consenting to a blood draw.

108. Mr. Ross was booked into jail on a $500 bond.

109. He spent around eight hours in custody and was released early the next morning.

110. Mr. Ross had never been arrested before in his life.

### B. False Charge of DUI Dismissed

111. For six weeks after Mr. Ross was arrested, he suffered from uncontrollable bowel movements due to stress and mental anguish from the arrest. He was treated multiple times by a doctor and underwent a colonoscopy to determine the cause of the bowel issues.

112. He paid $5000 to retain an attorney to defend him against the DUI charge.

113. On August 11, 2025, TBI completed its analysis of the blood alcohol content of Mr. Ross's blood. Mr. Ross's blood was "negative" for ethyl alcohol.

114. On September 19, 2025, the TBI test for ten classes of controlled substances showed that Mr. Ross's blood was negative for all tested controlled substances.

115. On December 17, 2025, six months after Mr. Ross was arrested, the district attorney in Williamson County entered a *nolle prosequi* for Mr. Ross's DUI charge and implied consent violation.

116.     Due to the stress and resultant bowel issues caused by the arrest, Mr. Ross did not return to his job at Amazon.

**Pattern of False Arrests for DUI by THP Troopers**

117.     Recent reporting by local news channel WSMV4 has revealed a demonstrated track record of false DUI arrests by THP Troopers.[2]

118.     WSMV4's reporting indicates that Trooper Zahn is responsible for at least eight arrests of sober drivers for DUI.

119.     Plaintiff Ross was both arrested by Trooper James Zahn.

120.     Trooper Zahn worked two stints at the Willaimson County Sheriff's Office ("WCSO") before joining THP.

121.     Trooper Zahn resigned at the end of 2021 from his position with the WCSO due in part to being passed over for a promotion, calling the promotion process a "joke" and complaining that his ability to competently swear out felony warrants had been questioned and undermined by the WCSO.

122.     Trooper Zahn has admitted in his WSCO Background Questionnaire that he himself had driven drunk "2-3 times" such that he could have been arrested.

123.     WSMV4's reporting also indicates that THP has an official or semi-official quota system for officers to make DUI arrest or face reprimand.[3]

---

[2] Jeremy Finley, *15 Tennesseans Arrested by State Troopers for Crimes They Didn't Commit*, WSMV4-TV (Aug. 14, 2025), https://www.wsmv.com/2025/08/14/15-tennesseans-arrested-by-state-troopers-crimes-they-didnt-commit/; Jeremy Finley, *Former Tennessee Troopers Say DUI Quotas Led to Arrests of Sober Drivers*, WSMV4-TV (Oct. 27, 2025), https://www.wsmv.com/2025/10/27/former-tennessee-troopers-say-dui-quotas-led-arrests-sober-drivers/; Jeremy Finley, *WSMV4 Investigates: Seven Innocent People Arrested for DUI by State Trooper*, WSMV4-TV (Aug. 14/wsmv4-investigates-seven-innocent-people-arrested-dui-by-state-trooper/; Jeremy Finley, *Former U.S. Attorney is 8th Sober Driver to be Arrested for DUI by State Trooper* (Aug. 27, 2025), https://www.wsmv.com/2025/08/28/former-us-attorney-is-8th-sober-driver-be-arrested-dui-by-state-trooper/.

[3] *Former Tennessee Troopers Say DUI Quotas Led to Arrests of Sober Drivers*, supra, Note 2.

13

124. THP Troopers did not use "intoximeter" machines (or breathalyzers) to measure alcohol content from expelled breath when arresting Plaintiffs—even Plaintiffs Fain and Ross, who were suspected of driving under the influence of alcohol.

125. THP Trooper Zahn was conducting a DUI checkpoint without having a breathalyzer, or any other objective, rapid means of testing, on hand.

126. TBI reporting for the year 2024 documented 419 DUI cases in Tennessee where testing of the accused showed zero alcohol or detectable drugs.

127. Of those 419 arrests, THP was responsible for 190 of them.

## CAUSES OF ACTION

### <u>COUNT I</u>
**Plaintiff Engle against Defendant Hill**
**False Arrest in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**

128. Plaintiff realleges and incorporates by reference the allegations set forth above.

129. Defendant Trooper Bridgett Hill falsely arrested Mr. Engle on July 22, 2025.

130. The false arrest of Plaintiff was a deprivation of his civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

131. Defendant Hill operated under the color of law when she arrested Plaintiff.

132. Defendant Hill lacked probable cause to believe Plaintiff has violated Tenn. Code Ann. §55-10-401.

133. Defendant Hill's false arrest of Plaintiff deprived him of his liberty.

134. Defendant Hill's false arrest of Plaintiff was in reckless disregard of Plaintiff's rights.

135. Defendant Hill's false arrest damages Plaintiff by depriving him of his liberty, inflicted emotional distress and caused financial and reputational damage.

14

**Plaintiff Engle against Defendant Hill**
**Malicious Prosecution in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**

136.     Plaintiff realleges and incorporates by reference the allegations set forth above.

137.     On July 22, 2025, Defendant Hill falsely charged Plaintiff with DUI under T.C.A. § 55-10-401.

138.     The false charge deprived Mr. Engle of his liberty by causing him to be jailed for 8 hours before making bond and being released from jail.

139.     Defendant Hill was acting under the color of state law when she initiated the false charge against Mr. Engle.

140.     Defendant Hill initiated the false charge in reckless disregard of Mr. Engle's rights.

141.     The false charges were resolved in Mr. Engle's favor on November 19, 2025, with entry of a *nolle prosequi*.

142.     The false charges deprived Plaintiff of his liberty, inflicted emotional distress, and caused financial and reputational harm.

**COUNT III**
**Plaintiff Engle against Tennessee Highway Patrol**
**Disability Discrimination**
**(Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213)**

143.     Tennessee Highway Patrol, as an agency of the State of Tennessee, is an entity to which the ADA applies.

144.     Charles Engle is disabled because of the macular degeneration in his left eye and injury to his right hip.

145.     Trooper Hill was aware of Mr. Engle's "bad hip" and limited vision in his left eye when she investigated him for DUI.

15

146. Trooper Hill wrongfully perceived Mr. Engle's disability and the effects of his disability as unlawful conduct—driving under the influence.

147. Mr. Engle, therefore, was denied the benefits of THP's services, programs or activities and/or was otherwise discriminated against by reason of his disability.

**COUNT IV**
**Plaintiff Fain against Defendant Pickel**
**False Arrest in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**

148. Plaintiff realleges and incorporates by reference the allegations set forth above.

149. Defendant Trooper Tim Pickel falsely arrested Mr. Fain on May 4, 2025.

150. The false arrest of Plaintiff was a deprivation of his civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

151. Defendant Pickel operated under the color of law when he arrested Plaintiff.

152. Defendant Pickel lacked probable cause to believe Plaintiff has violated Tenn. Code Ann. §55-10-401.

153. Defendant Pickel's false arrest of Plaintiff deprived him of his liberty.

154. Defendant Pickel's false arrest of Plaintiff was in reckless disregard of Plaintiff's rights.

155. Defendant Pickel's false arrest damages Plaintiff by depriving him of his liberty, inflicted emotional distress and caused financial and reputational damage.

**COUNT V**
**Plaintiff Fain against Defendant Pickel**
**Malicious Prosecution in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**

156. Plaintiff realleges and incorporates by reference the allegations set forth above.

16

157. On May 4, 2025, Defendant Pickel falsely charged Plaintiff with DUI under T.C.A. § 55-10-401.

158. The false charge deprived Mr. Fain of his liberty by causing him to be jailed for several hours before making bond and being released from jail.

159. Defendant Pickel was acting under the color of state law when he initiated the false charge against Mr. Fain.

160. Defendant Pickel initiated the false charge in reckless disregard of Mr. Fain's rights.

161. The false charges were resolved in Mr. Fain's favor on October 8, 2025 with entry of a *nolle prosequi*.

162. The false charges deprived Plaintiff of his liberty, inflicted emotional distress, and caused financial and reputational harm.

## COUNT VI
**Plaintiff Ross against Defendant Zahn**
**False Arrest in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**

163. Plaintiff realleges and incorporates by reference the allegations set forth above.

164. Defendant Trooper James Zahn falsely arrested Mr. Fain on July 11, 2025.

165. The false arrest of Plaintiff was a deprivation of his civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

166. Defendant Zahn operated under the color of law when he arrested Plaintiff.

167. Defendant Zahn lacked probable cause to believe Plaintiff has violated Tenn. Code Ann. §55-10-401.

168. Defendant Zahn's false arrest of Plaintiff deprived him of his liberty.

169. Defendant Zahn's false arrest of Plaintiff was in reckless disregard of Plaintiff's rights.

170.     Defendant Zahn's false arrest damages Plaintiff by depriving him of his liberty, inflicted emotional distress and caused financial and reputational damage.

## COUNT VII
**Plaintiff Ross against Defendant Zahn**
**Malicious Prosecution in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**

171.     Plaintiff realleges and incorporates by reference the allegations set forth above.

172.     On July 11, 2025, Defendant Zahn falsely charged Plaintiff with DUI under T.C.A. § 55-10-401.

173.     The false charge deprived Mr. Ross of his liberty by causing him to be jailed for several hours before making bond and being released from jail.

174.     Defendant Zahn was acting under the color of state law when he initiated the false charge against Mr. Ross.

175.     Defendant Zahn initiated the false charge in reckless disregard of Mr. Ross's rights.

176.     The false charges were resolved in Mr. Ross's favor on October 8, 2025 with entry of a *nolle prosequi*.

177.     The false charges deprived Plaintiff of his liberty, inflicted emotional distress, and caused financial and reputational harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that:

1.  The Defendants Answer this Complaint within the time period provided by law.

2.  That this cause be tried by a jury.

3.  That judgment for Plaintiffs enters against the Defendants on each count.

4.  That Plaintiffs be awarded compensatory damages against the Defendants in an amount to be determined by a jury.

18

5. Nominal damages against Defendants on all counts.

6. That Plaintiffs be awarded punitive damages in an amount to be decided by a jury.

7. Attorneys' fees and costs of suit as provided by 42 U.S.C. §1988.

8. Court costs.

9. Pre- and post-judgment interest at the legal rate.

10. The Court award Plaintiff such further relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: April 29, 2026                                  Respectfully submitted,

                                                       */s/ Tricia R. Herzfeld*
                                                       Tricia R. Herzfeld (BPR #26014)
                                                       Benjamin A. Gastel (BPR #28699)
                                                       Stella M. Yarbrough (BPR #33637)
                                                       **HERZFELD SUETHOLZ GASTEL**
                                                       **LENISKI AND WALL, PLLC**
                                                       1920 Adelicia St., Suite 300
                                                       Nashville, Tennessee 37212
                                                       Telephone: (615) 800-6225
                                                       tricia@hsglawgroup.com
                                                       ben@hsglawgroup.com
                                                       stella@hsglawgroup.com

                                                       Aaron Rothbaum (BPR 36572)
                                                       **RELENTLESS ADVOCACY, PLLC**
                                                       7000 Executive Center Dr., Suite 240
                                                       Brentwood, Tennessee 37027
                                                       Telephone: (615)891-3901
                                                       aaron@relentlesslaw.com

                                                       *Attorneys for Plaintiff*

19